BUCHALTER NEMER
A Professional Corporation
ROBERT E. IZMIRIAN (SBN: 53805)
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com

Attorneys for Secured Creditor and Respondent
BRIDGE BANK NATION ASSOCIATION

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>VALLEY PROCESS SYSTEMS, INC.,<br><br>Debtor. | CASE NO. 13-51936 ASW<br>Chapter 11<br><br>**OPPOSITION TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL FOR ATTORNEYS' FEES AND COSTS INCURRED FOR BENEFIT OF SECURED CREDITOR**<br><br>[11 U.S.C. §506(c); B.L.R. 9013-1]<br><br>Hearing: December 13, 2013<br>Time: 2:15 p.m.<br>Judge: Hon. Arthur S. Weissbrodt<br>Room: 3020 United States Courthouse<br>280 South First Street<br>San Jose, CA |

Bridge Bank National Association ("Bridge") submits this Opposition to Motion to Surcharge Secured Creditor Bridge Bank's Collateral for Attorneys' Fees and Costs Incurred for Benefit of Secured Creditor (respectively, the "Opposition" and the "Motion").

## I.  INTRODUCTION

The Motion is the almost perfect coda to this busted chapter 11 case. On March 25, 2013 the Debtor filed state court litigation captioned *Valley Process Systems, Inc. v James Castro, et. al*. (the "Castro Litigation") and shortly thereafter, on April 2, 2013, filed this chapter 11 case. The law firm of DiNapoli & Sibley ("D&S") represented the Debtor in both actions, acting as

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1

OPP. TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL, ETC.
BN 15229720v1

Case: 13-51936   Doc# 116   Filed: 11/19/13   Entered: 11/19/13 14:59:43   Page 1 of 6

Special Litigation Counsel in the state court and reorganization counsel before this Court. From the commencement of both actions it seems painfully clear that the Debtor had no plan whatsoever on how to finance the prosecution of the Castro Litigation and virtually no hope of confirming a chapter 11 plan in this Court. The disastrous outcomes of both actions seem foreordained.

Perhaps not surprisingly, when funds ran out to pay legal fees D&S abandoned the Debtor. On October 17, 2013 D&S moved to withdraw as insolvency counsel [Doc. # 94] and on October 24, 2013 notified opposing counsel in the Castro Litigation that it was withdrawing as plaintiff's counsel. The Office of the United States Trustee filed a Motion to Convert [Doc. # 97] citing, among other bases, D&S's Motion to Withdraw, which, if granted, would leave the corporate Debtor unrepresented. The Motion to Convert is scheduled to be heard on November 26, 2013.

Bridge's cash collateral has been used to fund Debtor's money losing operations. Month after month Debtor failed to meet cash collateral budgets incorporated into cash collateral orders approved by this Court and to which the Debtor agreed. Month after month Debtor filed operating reports chronicling its losses. Many creditors have suffered as a result of Debtor's operations as a chapter 11 debtor, but none more so than Bridge. Its cash collateral has significantly been diminished as a result of the Debtor's failure to rein in costs to operate at break even levels.

Now, by this Motion, Debtor would have the Court find that it and its counsel D&S have conferred a benefit upon Bridge by preserving and protecting its collateral sufficient to warrant a surcharge under 11 U.S.C. Section 506(c).

## II. <u>SURCHARGE TEST</u>

The test for allowance of a surcharge against a secured creditor's collateral pursuant to Section 506(c) is well settled in this Circuit. *In re Cascade Hydraulics & Utility Serv., Inc.*, 815 F.2d. 546,548 (9th Cir. 1987) held, and all subsequent 9th Circuit authority since, has held that under Section 506(c) the debtor or trustee must demonstrate that the expenses it seeks to

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OPP. TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL, ETC.
BN 15229720v1

Case: 13-51936    Doc# 116    Filed: 11/19/13    Entered: 11/19/13 14:59:43    Page 2 of 6

surcharge were either (i) reasonable, necessary and beneficial to the lender's recovery, or (ii) the lender caused or consented to the expenses.

The burden of proof is on the debtor or trustee to establish "in quantifiable terms that it expended funds directly to protect and preserve the collateral." *Cascade Hydraulics*, 815 F.2d. at 548.

In the case before this Court Debtor does not contend that Bridge "caused or consented" to the expenses, so the test of Section 506(c) can only be satisfied if Debtor can meet its burden of proof that the expenses were reasonable, necessary and beneficial. It is submitted that Debtor has not and cannot meet its burden.

## III. DISCUSSION

Debtor would have this Court conveniently compartmentalize the legal services of its counsel D&S, seeking a reward, via Section 506(c) for its litigation services, without any consideration for the detriments its reorganization services caused. Given the fact that the Debtor's own monthly operating report for the most recent reporting period ending September 20, 2013 [Doc. # 96] shows operating losses to date of $652,665 and past due post-petition accounts payable of $244,025, it is clear that in the short life of this failed chapter 11 case the rights of all creditors, including Bridge, have been significantly diminished.

The Debtor makes three unsupported and unsupportable assertions to anchor its claim to surcharge Bridge's collateral. [Debtor's Memorandum of Points and Authorities, Doc. # 104-1, 6:24-7:19] as follows:

- The filing and prosecution of the Castro Litigation were essential and necessary to recover on the insurance policy;
- The Castro Litigation fees were "reasonable" because D&S's fee application was largely granted and the payment of fees authorized; and
- The receipt of the recovery benefitted Bridge through no effort of its own.

There is a clear distinction between making such assertions and proving the elements of a surcharge.

3

OPP. TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL, ETC.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15229720v1

Case: 13-51936    Doc# 116    Filed: 11/19/13    Entered: 11/19/13 14:59:43    Page 3 of 6

### A. There is no proof whatsoever that the filing of the Castro Litigation was essential or necessary.

The "proof" adduced by Debtor for its assertion that D&S's efforts were essential or necessary is paragraph 7 of the Declaration of John DiNapoli [Doc. # 104-2] in which Mr. DiNapoli states his conclusion that "…as a result of the filing and prosecution of the [Castro Litigation] and provision of related and detailed information to Federated Insurance, the Debtor's insurance carrier, Federated Insurance paid the sum of $100,000…." Mr. DiNapoli appended to his Declaration what he describes as "confirming letters" as Exhibit 3 to his Declaration. Exhibit 3 consists of three letters, not one of which supports Mr. DiNapoli's assertion.

The first of the letters attached as Exhibit 3 is a letter dated June 20, 2013 from Federated Insurance to Mr. Salazar referencing a June 3, 2013 meeting. The second letter is dated August 22, 2013 addressed to Mr. DiNapoli putting Mr. DiNapoli on notice that Federated Insurance was claiming a right to reimbursement out of any recovery from Castro. The third letter, also dated August 22, 2013, is from Federated Insurance to Mr. Castro's counsel.

It is interesting to note that nowhere in any of the correspondence attached to Mr. DiNapoli's Declaration is there the slightest reference to information provided by D&S or any indication that the commencement or prosecution of the Castro Litigation caused the insurance payment to be made.

It is also interesting to note that on August 1, 2013 D&S filed its First Application of Debtor's Special Counsel for Reimbursement of Fees and Costs in State Court Action (April 4-August 1, 2013) [Doc. # 66]. Notably absent from the narrative portion of the Application and notably absent from the detailed time records attached thereto is <u>any mention whatsoever</u> of legal services necessary to recovering the insurance loss. In fact, according to the time records attached to the Application, D&S never once spoke to Federated Insurance and did not meet with Federated Insurance on June 3, 2013, the date when the Debtor provided Federated Insurance with information to support its claim of loss.

4

OPP. TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL, ETC.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15229720v1

Case: 13-51936    Doc# 116    Filed: 11/19/13    Entered: 11/19/13 14:59:43    Page 4 of 6

### B. The Debtor's analysis of the "reasonableness" of the fees is facile.

The Debtor's "proof" of the reasonableness of the fees of D&S is that the Court granted in large measure the First Application of Debtor's Special Counsel for Reimbursement of Fees and Costs in State Court Action (April 4-August 1, 2013) [Doc. # 66]. That misses the point. Litigation has many aspects. D&S prosecuted all aspects of the Castro Litigation, including propounding and answering discovery, filing opposition to a demurrer, reviewing documents and generally consulting with its client, the Debtor. Presumably all the legal services rendered were necessary at the time they were rendered, were rendered efficiently, and were worthy of compensation. That does not mean, however, that the legal services rendered were either necessary to the recovery of the insurance loss or reasonably related thereto.

The Debtor makes no attempt to identify which, if any, of D&S's legal services were necessary to recovery of the insurance loss, or the reasonable value of such services. As discussed in Section A above, the detailed time records submitted by D&S in support of its fees do not identify a single task performed by such counsel to support the contention that the legal fees were necessary, and the proof of reasonableness adduced by the Debtor fails to value such services in any meaningful way.

### C. The Debtor's statement that the receipt of the insurance recovery benefitted Bridge through no effort of its own is false.

No one disputes that the Debtor received $100,000 from Federated Insurance. Somehow, however, Debtor fails to mention what happened to it. As set forth in the Declaration of Susan Wadi submitted concurrently herewith, the $100,000 was deposited into Debtor's bank account and used by the Debtor to operate pursuant to approved Budgets attached to a succession of cash collateral orders. It did not pay down the Debtor's obligations to Bridge. The Debtor obtained the full use of the funds and spent them in its operations.

How the Debtor's use of the funds can be viewed as a benefit to Bridge is unstated. How the diminution of Bridge's cash collateral as a result of the operating losses of Debtor can be characterized as "no effort" stretches any definition of "effort" to its breaking point. To put it simply, Bridge paid dearly for the Debtor to use and consume the Federated Insurance recovery.

5
OPP. TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL, ETC.
BN 15229720v1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

Case: 13-51936   Doc# 116   Filed: 11/19/13   Entered: 11/19/13 14:59:43   Page 5 of 6

It should also be well noted by the Court that VPS and its counsel were not passive spectators to the use of cash collateral. Repeatedly VPS, through D&S, filed emergency motions seeking the use of cash collateral, in each instance arguing that the protections afforded to Bridge would preserve and protect its collateral. As set forth in the accompanying Declaration of Susan Wadi, those proffered protections were no protection at all. Furthermore, the cash collateral orders did not restrict the payment of legal fees to D&S as long as the Debtor performed to an agreed Budget, which it was unable to do. Had the Debtor met its cash collateral obligations to maintain an agreed minimum of $2.7 Million of cash plus receivables, D&S would have received payment. Bridge never refused or rejected the Debtor's budget projections, a fact specifically acknowledged by Mr. Salazar, Debtor's President and Chief Executive Officer, at paragraph 5 of his Declaration in Support of Debtor's Emergency Motion for Conditional Use of Cash Collateral to Wind-Down Operations [Doc. # 82-2] filed with this Court on September 5, 2013.

## IV. CONCLUSION

Debtor has failed to meet the *Cascade Hydraulics* test for a surcharge that the expenses of D&S were reasonable, necessary and beneficial to Bridge's recovery. In fact, the proof, to the extent presented, points in exactly the opposite direction. Bridge did not benefit from receipt of the Federated Insurance recovery, regardless of whether the legal services provided by D&S assisted in that recovery or not. The recovery was simply consumed by the Debtor through its operating losses.

Debtor made no effort to prove the nexus between the legal services rendered by D&S and the Federated Insurance recovery, much less to prove that the services were reasonable. The surcharge motion must be denied.

DATED: November 18, 2013          BUCHALTER NEMER
A Professional Corporation


By: /s/ Robert E. Izmirian
ROBERT E. IZMIRIAN
Attorneys for Secured Creditor and Respondent
BRIDGE BANK NATION ASSOCIATION

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

6

OPP. TO MOTION TO SURCHARGE SECURED CREDITOR BRIDGE BANK'S COLLATERAL, ETC.
BN 15229720v1

Case: 13-51936    Doc# 116    Filed: 11/19/13    Entered: 11/19/13 14:59:43    Page 6 of 6