BUCHALTER NEMER
A Professional Corporation
ROBERT E. IZMIRIAN (SBN: 53805)
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com

Attorneys for Secured Creditor and Respondent
BRIDGE BANK NATION ASSOCIATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re:

VALLEY PROCESS SYSTEMS, INC.,

Debtor.

CASE NO. 13-51936 ASW
Chapter 11

**OPPOSITION TO SECOND MOTION TO SURCHARGE BRIDGE BANK'S COLLATERAL FOR ATTORNEYS' FEES AND COSTS INCURRED FOR BENEFIT OF SECURED CREDITOR**

[11 U.S.C. §506(c)]

| | |
|---|---|
| Hearing: | January 30, 2014 |
| Time: | 1:45 pm |
| Judge: | Hon. Arthur S. Weissbrodt |
| Room: | 3020 United States Courthouse |
| | 280 South First Street |
| | San Jose, CA |

Bridge Bank, National Association ("Bridge Bank") submits this Opposition to the Second Motion to Surcharge Secured Creditor Bridge Bank's Collateral for Attorneys' Fees and Costs Incurred for Benefit of Secured Creditor (the "Second Motion") filed by the law firm Dinapoli & Sibley ("D&S"). For the reasons set forth below, it is submitted that the Motion is incongruously mislabeled – D&S has conferred no "benefit" whatsoever upon Bridge Bank and is not entitled to a surcharge in any amount.

I. **INTRODUCTION**

This Second Motion has been brought while D&S' initial Surcharge Motion has been

submitted to the Court for ruling. The Second Motion proclaims that since the initial Surcharge Motion D&S has performed legal services benefitting Bridge Bank which warrant an additional surcharge. This is untrue.

One thing is obvious. But for this pending bankruptcy case D&S would <u>not</u> be entitled to compensation from Bridge Bank <u>and</u> the legal services being performed by D&S would <u>not</u> be necessary. D&S has apparently made the legal strategic choice to delay dismissal of this fatally broken Chapter 11 case so it can remain employed in hopes of collecting a fee from Bridge Bank, but had the case been timely dismissed, as promised by D&S at the time the Court heard the motion of the United States Trustee to convert this case, none of the legal services allegedly performed by D&S would have been necessary. This is akin to a dog chasing its own tail – lots of activity for no good purpose.

## II.  ARGUMENT

There are three accounts receivable of the Debtor for which D&S claims credit and a right to surcharge the proceeds: (i) Western Digital, (ii) J.R. Griffin, and (iii) "Intermodal," which is actually Intermolecular. Each will be addressed in turn.

### A.  The Western Digital Receivable

D&S filed a Motion to Approve Stipulation with Western Digital in which Debtor sought to settle and resolve all outstanding accounts for $48,923.52 in cash plus a Reserve of $25,000 to protect Western Digital from potential lien claimants. Bridge Bank raised an objection that the proposed settlement was inconsistent with the Debtor's representations made to Bridge Bank (and this Court) regarding the amounts owed. After review, Debtor <u>agreed</u> with Bridge Bank that the proposed stipulation was in error. As a result, based on Bridge Bank's opposition, an agreed Order has been circulated and approved by Debtor, Bridge Bank and Western Digital which <u>confirms</u> that Bridge Bank's position was correct.

D&S, which first presented defective pleadings to the Court for which it sought payment, now wants more money for cleaning up its own mistakes.

### B.  The J.R. Griffin Receivable

D&S, in apparent disregard of Federal Rule of Bankruptcy Procedure 7001(1), filed a

"Motion for Turnover" against J.R. Griffin and asked this Court to enter an order directing J.R. Griffin to pay Debtor what Debtor contended was owed. Pace Supply and J.R. Griffin each opposed the motion. J.R. Griffin responded that the statutory claims period for asserting mechanics and materialmens liens had yet to run, so turnover relief was inappropriate and left J.R. Griffin exposed to liability. Pace Supply argued, correctly, that it had timely preserved its mechanics lien rights, a fact "missed" by D&S in its original Motion for Turnover.

The Motion for Turnover has been continued to January 30, 2014. D&S' rush to file the Motion for Turnover without adequate investigation of the facts seems directly related to its efforts to enrich itself at the expense of Bridge Bank. Prior to the Motion for Turnover Bridge Bank and Debtor, without the need for legal counsel involvement, had all but resolved the J.R. Griffin receivable, but could not complete the resolution because counsel for the Debtor "checked out" and refused to acknowledge the resolution.

At best, the Motion for Turnover was sloppy and wasteful of the time of all counsel. It hardly deserves additional compensation, and to the extent compensation is allowed, the services cannot be said to have benefitted Bridge Bank.

**C.     The "Intermodal" Receivable**

D&S, on behalf of Debtor, filed a Motion for Turnover of Accounts Receivable Owed by Intermodal, Inc. Again D&S failed to comply with F.R.P.B 7001(1), which requires a complaint in an adversary proceeding.

"Intermodal" is actually Intermolecular, Inc., an account debtor of the Debtor. A close reading of the "Intermodal" motion shows that it seeks to approve a form of compromise – an agreed reduction in scope of work – although the details as to when the compromise was made or how it was determined are in short supply.

**D.     The Wind Down Budget**

Attached to the Declaration of Susan Wadi, submitted herewith, is an email exchange between Cole Porter, on behalf of Debtor, and Jennifer Holloway of Intermolecular, in which the parties appear to have reconciled the receivable without need for any legal intervention by adjusting the amount owed because of overbilling and a reduction in scope of work completed

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

before the Debtor shut down.

As set forth in the Declaration of Ms. Wadi, Bridge Bank set aside $150,000 <u>after</u> all work was to have been completed by Debtor to pay for Debtor's wind down expenses to reconcile and collect receivables. This was done with the consent and agreement of VPS. VPS obtained the benefits by accepting the use of the funds and exhausting them. D&S now asserts that there was no agreement for the wind down (because it failed to file a motion to authorize it, presumably) and that it is entitled to surcharge its legal fees <u>in addition to</u> Debtor's use of the wind down funds.

### III.  CONCLUSION

Debtor and D&S would have to be profoundly tin eared to believe that Bridge Bank consented to or encouraged D&S to participate in the resolution of the foregoing receivables. At every opportunity Bridge Bank has raised objection. No benefit has been conferred upon Bridge Bank. To the contrary, sloppy and improper pleadings have run up the costs of all parties, and the case remains in Chapter 11 apparently for the sole purpose of affording D&S an opportunity to seek payment where none is provided in applicable non bankruptcy law. The Surcharge Motion should be denied.

DATED: January 14, 2014

BUCHALTER NEMER
A Professional Corporation


By: /s/ Robert E. Izmirian
ROBERT E. IZMIRIAN
Attorneys for Secured Creditor and Respondent
BRIDGE BANK NATION ASSOCIATION